Matter of Hanley v Trustees of Columbia Univ. (2020 NY Slip Op 07638)





Matter of Hanley v Trustees of Columbia Univ.


2020 NY Slip Op 07638


Decided on December 17, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 17, 2020

529523

[*1]In the Matter of the Claim of Colleen Hanley, Appellant,
v
Trustees of Columbia University et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: November 19, 2020

Before: Garry, P.J., Egan Jr., Aarons and Pritzker, JJ.


Law Offices of Joseph A. Romano, PC, New York City (Joseph A. Romano of counsel), for appellant.
Stewart, Greenblatt, Manning & Baez, Syosset (Luke R. Tarantino of counsel), for Trustees of Columbia University and another, respondents.



Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed December 28, 2018, which ruled that claimant did not sustain a causally-related disability and denied her claim for workers' compensation benefits.
Claimant, who worked for the employer as an executive assistant from May 1, 2017 to June 15, 2017, filed a claim for workers' compensation benefits contending that she suffered from, among other things, certain symptoms constituting sick building syndrome. Following numerous evaluations, depositions and hearings, a Workers' Compensation Law Judge disallowed the claim, finding, among other things, that claimant failed to establish a causal relationship between her employment and the conditions attributed thereto — specifically, sick building syndrome, major depressive disorder and posttraumatic stress disorder (hereinafter PTSD). Upon administrative review, the Workers' Compensation Board affirmed, concluding that claimant "provided insufficient credible evidence that she suffered from a condition, mental or physical, caused by her brief work environment." This appeal ensued.
We affirm. "The Board is empowered to determine the factual issue of whether a causal relationship exists based upon the record, and its determination will not be disturbed when supported by substantial evidence" (Matter of Kotok v Victoria's Secret, 181 AD3d 1146, 1146-1147 [2020] [internal quotation marks and citations omitted]; accord Matter of Cartafalsa v Zurich Am. Ins. Co., 175 AD3d 1762, 1763 [2019]; Matter of Ellis v First Student, Inc., 174 AD3d 1243, 1243 [2019]). In this regard, "[c]laimant bears the burden of demonstrating, by competent medical evidence, the causal connection or relationship between [her] employment and the claimed disability" (Matter of Ellis v First Student, Inc., 174 AD3d at 1243; see Matter of Wen Liu v Division of Gen. Internal Medicine, Mount Sinai Sch. of Medicine, 186 AD3d 1770, 1771 [2020]; Matter of Kotok v Victoria's Secret, 181 AD3d at 1147). Such evidence, in turn, "must signify a probability of the underlying cause that is supported by a rational basis and must not be based upon a general expression of possibility" (Matter of Ellis v First Student, Inc., 174 AD3d at 1243; accord Matter of Cartafalsa v Zurich Am. Ins. Co., 175 AD3d at 1763; see Matter of Wen Liu v Division of Gen. Internal Medicine, Mount Sinai Sch. of Medicine, 186 AD3d at 1771). To the extent that conflicting medical opinions on the issue of causation are presented, the Board is vested with the exclusive authority to resolve such conflicts and credit one expert's opinion over that of another (see Matter of Kotok v Victoria's Secret, 181 AD3d at 1147; Matter of Byrnes v New Is. Hosp., 167 AD3d 1128, 1129 [2018]).
Claimant testified (and reported to certain medical professionals) that she experienced multiple symptoms, including daily nausea and vomiting, during a six-week period while working for the employer. Claimant allegedly suffered from [*2]sick building syndrome, and she attributed her symptoms to carbon monoxide poisoning and exposure to toxic mold and mildew. According to claimant, the heat and humidity in her workplace were unbearable, and water constantly flowed from a mechanical closet located roughly 20 feet from her cubicle. Additionally, claimant testified regarding alleged insect and rodent infestations. All of these conditions, in turn, purportedly exacerbated claimant's preexisting major depressive disorder and PTSD. The record is bereft of objective evidence supporting claimant's subjective complaints — particularly with respect to her allegations of carbon monoxide poisoning and/or exposure to toxic mold and mildew. Claimant's immediate supervisor testified (and claimant acknowledged) that, during the six-week period at issue, claimant called in sick on only one occasion, when she broke out in hives — a condition that she attributed to an allergic reaction to hair dye. Notably, when claimant presented to her primary care physician six days after she stopped working, the physician noted that "[t]he exam was in the normal ranges" and acknowledged that there was "nothing remarkable" to report.[FN1] Claimant's supervisor received an email from claimant complaining of headaches and nosebleeds throughout her employment, but that email is dated five days after claimant's last day of work, and there is no dispute that claimant failed to seek medical treatment for her various ailments until one week after she ceased working for the employer.
Another witness for the employer, who worked in the same office space as claimant, disputed claimant's description of the work environment. Although this witness acknowledged that the office occasionally experienced issues with insects, temperature/humidity regulation and condensation near the mechanical closet and that three mice had been successfully captured, the majority of these issues did not correspond with claimant's brief period of employment. This witness further testified that the office space contained hardwired carbon monoxide detectors, and that a full air quality assessment conducted in June 2017 revealed "no evidence of carbon monoxide." This is significant because, although claimant consistently reported to medical personnel that she suffered from carbon monoxide poisoning and/or exposure to toxic mold and mildew, the record contains no objective proof of such exposures.
By all accounts, claimant's reported physical symptoms abated shortly after she left her employment and, thus, the issue of causal relationship turned upon the alleged exacerbation of claimant's preexisting major depressive disorder and PTSD. Both the psychologist to whom claimant was referred for treatment, Charles Robins, and the psychologist who conducted an independent examination of claimant, Andrew Elmore, opined that there was a causal relationship between claimant's work environment and the exacerbation of her preexisting psychological conditions[*3]. However, those opinions were, as the Board noted, based upon a faulty premise, i.e., that claimant had in fact been exposed to carbon monoxide poisoning — a proposition that, as noted previously, finds no support in the record.
Both psychologists acknowledged that they relied upon claimant's self-reported history of her symptoms — a history that, in turn, formed the basis for the other medical records they had reviewed. Robins' testimony further revealed that claimant failed to disclose a number of significant events when reporting her prior medical and work history, including her preexisting psychological diagnoses and the events giving rise thereto. Although Robins nonetheless insisted that such information would not change his opinion regarding causal relationship — despite the fact that claimant erroneously reported to him that she worked "in an office located in a boiler room" — the fact remains that the opinions rendered by Robins and Elmore "were based upon the unsubstantiated assumption that environmental contaminants actually existed at claimant's workplace" (Matter of Marks v County of Tompkins, 274 AD2d 764, 765 [2000]; see Matter of Benjamin v International Bus. Machs., 293 AD2d 889, 891 [2002]; see also Matter of Smith v Rochester-Genesee Regional Transp. Auth., 174 AD3d 1264, 1266-1267 [2019]). Under these circumstances, the Board was free to reject such opinions as "unconvincing" (Matter of Smith v Rochester-Genesee Regional Transp. Auth., 174 AD3d at 1267; see Matter of Benjamin v International Bus. Machs., 293 AD2d at 891).
Similarly, the lack of objective findings to support claimant's complaints, coupled with the employer's contrary testimony regarding claimant's working conditions and the inconsistencies in claimant's disclosures to Robins and Elmore, raise issues with claimant's credibility that the Board was free to resolve against her. For all of these reasons, the Board's decision finding that claimant failed to meet her burden of establishing a causal relationship between her employment and her claimed disability is supported by substantial evidence (see Matter of Benjamin v International Bus. Machs., 293 AD2d at 891; Matter of Marks v County of Tompkins, 274 AD2d at 765-766). Claimant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: A physician trained in occupational environmental medicine, who examined claimant on behalf of the employer in April 2018, testified that if claimant had in fact vomited for "like 42 days," one would have expected to see some "physical findings" when claimant first sought treatment six days after leaving her employment.