Matter of Reith v City of Albany (2021 NY Slip Op 07339)





Matter of Reith v City of Albany


2021 NY Slip Op 07339


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

532779
[*1]In the Matter of the Claim of Brian C. Reith, Appellant,
v
City of Albany et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:November 15, 2021

Before:Lynch, J.P., Clark, Aarons and Pritzker, JJ.

Law Firm of Alex Dell, PLLC, Albany (Edward Obertubbesing of counsel), for appellant.
Manes and Manes, Armonk (Matthew T. Keller of counsel), for City of Albany and another, respondents.



Lynch, J.P.
Appeal from an amended decision of the Workers' Compensation Board, filed July 13, 2020, which ruled, among other things, that claimant did not sustain a causally-related psychological injury.
In 2018, claimant filed a claim for workers' compensation benefits alleging that he suffered from posttraumatic stress disorder (hereinafter PTSD) brought on by "countless horrific, work-related emergency situations" that he had encountered during his decades-long career as a firefighter. Following a hearing, a Workers' Compensation Law Judge established the claim for work-related PTSD and authorized medical treatment. Upon administrative review, the Workers' Compensation Board disallowed the claim, finding that the 2017 amendment to Workers' Compensation Law § 10 (3) did not apply and, further, that claimant's medical proof was insufficient to establish that he sustained a causally-related psychological injury. Claimant appealed to this Court and additionally sought reconsideration and/or full Board review.
In response, the Board issued an amended decision finding, among other things, that claimant could in fact avail himself of the statutory amendment. The Board nonetheless disallowed the claim, finding that claimant's evidence was insufficient to establish the required causal relationship between his employment as a firefighter and his PTSD. Claimant appealed from the Board's amended decision, and this Court granted claimant's subsequent motion to withdraw his prior appeal.
We reverse. Prior to the enactment of Workers' Compensation Law § 10 (3) (b) in April 2017 (see L 2017, ch 59, part NNN, subpart I, § 1), a claimant seeking to recover for a psychological injury was required to "demonstrate that the stress that caused the claimed mental injury was greater than that which other similarly situated workers experienced in the normal work environment" (Matter of Karam v Rensselaer County Sheriff's Dept., 167 AD3d 1108, 1109 [2018] [internal quotation marks and citations omitted], lv denied 33 NY3d 901 [2019]; see Matter of Rivenburg v County of Albany, 187 AD3d 1282, 1283 [2020]). The statutory amendment, however, effectively removed that hurdle for certain first responders by providing, as relevant here, that where a firefighter "files a claim for mental injury premised upon extraordinary work-related stress incurred in a work-related emergency, the [B]oard may not disallow the claim, upon a factual finding that the stress was not greater than that which usually occurs in the normal work environment" (Workers' Compensation Law § 10 [3] [b]; see Matter of McMillan v Town of New Castle, 162 AD3d 1425, 1426 [2018]).[FN1]
During the hearing, claimant explained that he had witnessed several traumatic incidents during his nearly 26-year career as a firefighter, including a suicide, a triple homicide of children, car accidents with fatalities and individuals who had been "dead for days stuck to the floor." He also recounted spraining his ankle after he [*2]slipped on brain matter while rendering aid to a victim, experiencing CPR regurgitation while attempting to resuscitate a fellow firefighter and dragging a woman out of a fire, which resulted in "deglov[ing] her."[FN2]
Claimant began experiencing PTSD symptoms in January 2018, prompting him to seek professional treatment. His symptoms included "uncontrollable crying," weight loss, chest pain and outbursts of anger, with claimant testifying that he "sometimes [went] three days without eating[,] . . . was sleeping . . . [around] three hours a night" and had to be put on a heart monitor at work. Claimant's treatment records also document a host of symptoms that were indicative of "serious emotional and psychological difficulties and . . . serious impairment in relational, work and/or school functioning." Claimant's psychotherapy intake note, dated January 22, 2018, states that he was experiencing "anxiety of a clinically significant magnitude." The foregoing evidence readily establishes that claimant's claim is "premised upon extraordinary work-related stress" within the meaning of Workers' Compensation Law § 10 (3) (b).
The question distills to whether claimant satisfied his burden of demonstrating a causal relationship between his employment and his documented PTSD diagnosis (see Matter of Sudnik v Pinnacle Envtl. Corp., 190 AD3d 1067, 1068 [2021]; Matter of Hanley v Trustees of Columbia Univ., 189 AD3d 1847, 1847 [2020]). In this regard, the requisite medical opinion evidence need not "be expressed with absolute or reasonable medical certainty" (Matter of Johnson v Borg Warner, Inc., 186 AD3d 1772, 1773 [2020] [internal quotation marks and citations omitted]). It must, however, "signify a probability of the underlying cause that is supported by a rational basis and not be based upon a general expression of possibility" (id. [internal quotation marks and citations omitted]; see Matter of Ellis v First Student, Inc., 174 AD3d 1243, 1243 [2019]).
The medical opinion evidence proffered by claimant satisfied this burden. The record includes a July 13, 2018 letter from claimant's treating psychologist — Raymond Angelini — who opined that claimant was suffering from PTSD "as a result of responding to countless horrific, work-related emergency situations over the course of his career as a firefighter . . ., including but not limited to exposure to death, dismemberment, disfigurement[] and CPR regurgitation." Angelini repeated this opinion during the hearing before the Board, averring that claimant was suffering from PTSD "secondary to a number of work[-]related stressful experiences" and noting that he had been "exposed to [several] pretty horrific situations in his role as a firefighter," including "witness[ing] one of his close friends die in his arms while he was performing CPR." Claimant's treatment records from other clinicians also document a relationship between his PTSD symptoms and his career as a firefighter. Notably, claimant testified [*3]that, before January 2018 — when he began experiencing symptoms — he had never been treated for any mental health issues. No opposing medical proof was presented by the employer or the third-party administrator controverting Angelini's opinion.
Given Angelini's unequivocal opinion — stated in both his July 13, 2018 letter and during the hearing — that claimant's PTSD resulted from his employment as a firefighter, which was based upon certain horrific experiences that claimant encountered during the course of his career and was consistent with the history reflected in claimant's treatment records from other providers, we conclude that claimant demonstrated, through competent medical evidence, a reasonable probability that his PTSD was causally related to his employment (see Matter of Dupont v Quality Distrib., Inc., 158 AD3d 967, 969-970 [2018]; Matter of Shkreli v Initial Contract Servs., 55 AD3d 1067, 1069-1070 [2008]; Matter of Williams v Colgate Univ., 54 AD3d 1121, 1122-1123 [2008]; compare Matter of Ayala v DRE Maintenance Corp., 238 AD2d 674, 676 [1997], affd 90 NY2d 914 [1997]). In holding otherwise, the Board reasoned that the medical evidence lacked specificity as to the particular events alleged to have caused claimant's PTSD. We find that critique unwarranted. The nature of each incident was understandably traumatic, obviating the need for further graphic detail. The Board's conclusion that Angelini failed to provide a "rational basis" for his opinion because he failed to "sufficiently describe those traumatic experiences" fails to duly account for Angelini's and claimant's actual testimony. The Board is certainly authorized to weigh the medical evidence, but it cannot outright reject uncontroverted medical testimony as to causation (see Matter of Lovegrove v Regional Food Bank of Northeastern NY, 148 AD3d 1434, 1435 [2017]). As the Board's decision is not supported by substantial evidence, it must be reversed.
Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the amended decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: The Board initially ruled — citing the singular form of the phrase "in a work-related emergency" — that the statutory amendment did not apply where the injury sustained was the product of stress-inducing events incurred over a period of time. Upon reconsideration, the Board effectively reversed course, ruling that the amendment could apply where, as here, a claimant "alleges multiple incidents of exposure rather than one singular event" (citing Employer: Town of New Castle, 2018 WL 6132752, *4, 2018 NY Wrk Comp LEXIS 11628, *10 [WCB No. G140 4105, Nov. 16, 2018]).

Footnote 2: A degloving injury is an "avulsion of soft tissue, in which an extensive portion of skin and subcutaneous tissue detaches from the underlying fascia and muscles. . . . In addition to local tissue injuries, severe concomitant injuries and massive blood loss typically occur" (Rifat Latifi et al., The Therapeutic Challenges of Degloving Soft-Tissue Injuries, Journal of Emerg Trauma Shock, Vol. 7, 3 [2014], US National Library of Medicine, National Institutes of Health, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4126125/).